## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PROHOME, INC., a Kansas Corporation, and PROHOME INTERNATIONAL, LLC, A Nevada limited liability company, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 05-1175-MLB |
| | ) | |
| LARRY S. JOHNSON, an individual resident of Colorado; and MHS HOLDINGS, LLC, a Colorado limited liability company, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

---

### MEMORANDUM AND ORDER

This case comes before the court on defendants' joint motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. 11). The motion has been fully briefed and is ripe for decision. (Docs. 12, 17, 18, 21, 22). For the reasons herein, defendants' motion to dismiss is granted.

## I.   FACTS

Defendant Larry Johnson was a member of ProHome Colorado, LLC, a franchisee of plaintiff, ProHome, Inc. On July 8, 2001, ProHome Colorado, LLC and ProHome, Inc. entered into a Settlement and Termination Agreement in order to dissolve the franchise relationship. ProHome Colorado, LLC agreed to pay ProHome, Inc. $192,000, pursuant to a payment plan and a promissory note. The settlement agreement included a forum selection clause that stated:

> In the event that any action is brought concerning the subject matter of this Agreement or for the enforcement or validity of the same, such action shall be

> brought only in a federal or state court sitting within Sedgwick County, Kansas.  The parties consent to the exercise of jurisdiction by courts within Sedgwick County, Kansas.

(Doc. 12, exh. C at 4).  ProHome, Inc. and ProHome Colorado, LLC agreed to be bound by <u>all</u> the agreement's terms, including the forum selection clause.  The agreement stated that Johnson individually agreed to be bound by its restrictive covenant regarding noncompetition.  The agreement cannot be read to say that Johnson agreed to the forum selection clause.

ProHome Colorado changed its name to My Home Solution Holding Company, LLC, (My Home), presumably to comply with the terms of the Deidentification Period provision of the agreement.  Thereafter, on August 9, 2002, ProHome, Inc., filed suit in Sedgwick County District Court against My Home to recover sums due under the agreement.  Johnson and ProHome Colorado were not named as parties.

Two months later, on November 1, 2002, My Home entered into an asset purchase and sale agreement with MHS Holdings, LLC, to sell My Home's assets.  Larry Johnson signed the asset purchase agreement as Managing Member of My Home.  Jami Edwards signed as Managing Member of MHS Holdings.  The asset purchase agreement listed the assets that were being sold by My Home and the liabilities that MHS would take over in exchange for the assets. The asset purchase agreement did not mention the sums owed by My Home under the terms of the ProHome, Inc./ProHome Colorado settlement which were the subject of the Sedgwick County lawsuit. On the contrary, the asset purchase agreement contained the following "Warranties and Representations of Seller":

-2-

> Pending Litigation. To the best of Seller's knowledge,
> no litigation at law or in equity and no proceeding
> before any commission or other administrative or
> regulatory authority pending or threatened against Seller
> which would or may have a material adverse effect upon
> the property, assets or business of Seller or which seeks
> to, or might have the effect of restraining, prohibiting,
> or interfering with the transaction contemplated hereby.

(Doc. 12, Larry Johnson Affidavit, exh. G).

On April 17, 2003, My Home filed for dissolution in Colorado.

On July 25, 2003, the Sedgwick County suit was settled and dismissed. (Doc. 12, Larry Johnson Affidavit). The terms of the settlement are not disclosed in the record.

There is no claim that either MHS or Johnson ever conducted any business in the state of Kansas.

## II.   ANALYSIS

Plaintiffs bear the burden of establishing personal jurisdiction over defendants. Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988). Plaintiffs' only basis for personal jurisdiction is both Johnson and MHS "agreed in contract to jurisdiction regarding this matter in the state of Kansas." (Doc. 1 at 2). "This matter" presumably encompasses all of plaintiffs' claims: federal trademark and unfair competition and related state violations and breach of the ProHome, Inc./ProHome Colorado settlement agreement.

### A.   Larry Johnson

Plaintiffs assert that personal jurisdiction is proper against Johnson since he signed the ProHome, Inc./ProHome Colorado settlement agreement. Johnson, however, signed the agreement as manager of ProHome Colorado, LLC. Johnson did not consent as an

-3-

individual to the forum selection clause.  On the contrary, the only evidence before the court is that Johnson individually consented to be bound only by the restrictive covenant regarding non-competition. (Doc. 12, exh. C at 5).  Since no evidence exists to support the conclusion that Johnson individually consented to the forum selection clause or otherwise conducted any business in Kansas, Johnson is not subject to personal jurisdiction in Kansas. See SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 969 F. Supp. 1254, 1261 (D. Kan. 1997)(rev'd on other grounds, 1998 WL 436579 (10th Cir. July 30, 1998)).

The motion to dismiss is granted as to Johnson.

**B.    MHS**

MHS also has not conducted any business in Kansas.  The settlement agreement does provide that it shall be binding on the parties successors and assigns, which arguably would be My Home. However, it is important to keep in mind that MHS never signed the ProHome, Inc./ProHome Colorado settlement agreement and the asset purchase agreement between My Home and MHS does not mention ProHome, Inc. or ProHome Colorado LLC. Therefore, in order for this court to have personal jurisdiction over MHS, plaintiffs must make a prima facie showing that MHS somehow has successor liability under the ProHome, Inc./ProHome Colorado settlement agreement for the liabil-ities of ProHome Colorado, LLC, the party which agreed that an action to enforce the settlement agreement can be brought in this court.

The Kansas Supreme Court has determined that the "law of the place of transfer controls whether successor liability will be

-4-

applied." <u>Gillespie v. Seymour</u>, 19 Kan. App.2d 754, 763, 876 P.2d 193, 201 (Kan. Ct. App. 1994).   The asset purchase agreement was executed in the state of Colorado.   (Doc. 12, exh. G at 12). Colorado law applicable to successor liability is as follows:

> Generally, a corporation that acquires the assets of another corporation does not become liable for the debts of the selling corporation.   However, successor corporations have been held liable if: (1) there is an express or implied assumption of liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the purchaser is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability.

<u>CMCB Enterprises, Inc. v. Ferguson</u>, 114 P.3d 90, 93 (Colo. Ct. App. 2005); <u>Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.</u>, 837 P.2d 282, 283 (Colo. Ct. App. 1992); <u>Ruiz v. ExCello Corp.</u>, 653 P.2d 415 (Colo. Ct. App. 1982).   Kansas recognizes essentially the same elements.   <u>Crane Construction Co. v. Klaus Masonry, LLC</u>, 114 F. Supp. 2d 1116, 1119 (D. Kan. 2000).   "[I]t would be appropriate in Kansas to exercise personal jurisdiction over a successor corporation where liability under any of the above four circumstances is also shown." <u>Inter-Americas Ins. Corp., Inc. v. Xycor Systems, Inc.</u>, 757 F. Supp. 1213, 1218 (D. Kan. 1991).   "A corporation should not be able to escape liability by converting into a new shell and operating in a different forum." <u>Id.</u>

1.   Fraud exception

Plaintiffs assert that MHS can be liable under the fraud exception based upon language in the asset purchase agreement which states:

> To the best of Seller's [My Home's] knowledge, no litigation at law or in equity and no proceeding before any commission or other administrative or regulatory

> authority pending or threatened against Seller which
> would or may have a material adverse effect upon the
> property, assets or business of Seller or which seeks to,
> or might have the effect of restraining, prohibiting, or
> interfering with the transaction contemplated hereby.

(Doc. 12 at 3.7). This representation by My Home was false. ProHome, Inc., initiated suit against My Home on August 2, 2002, and the asset agreement was entered into on November 1, 2002. The suit against My Home was filed in order to recover $104,000 due under the settlement agreement. While MHS was not assuming liability for the debt, an adverse judgment could affect the assets that were being transferred.

A finding that a statement was false does not, however, equate to fraud. "To establish fraud, the plaintiff must show that the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff." Coors v. Security Life of Denver Ins. Co., 112 P.3d 59, 66 (Colo. 2005). The court cannot say as a matter of law that My Home's conduct was fraudulent. But even if fraud by My Home ultimately could be proven, the fraud will be that of My Home, not that of MHS. Plaintiffs therefore have failed to make a prima facie showing that adequately establishes that MHS is bound by the forum selection clause under the fraud theory of successor liability.

2.   Mere Continuation Exception

"The mere continuation exception applies when there is a continuation of directors, management, and shareholder interest

and, in some cases, inadequate consideration." <u>Alcan</u>, 837 P.2d at 283.  At the time of the asset purchase agreement, neither My Home nor MHS had similar members.  Johnson did not become a member of MHS until sixteen months after selling the assets of My Home. Therefore, the evidence does not support a prima facie showing that MHS was a mere continuation of My Home under Colorado law.[1]

The motion to dismiss is granted as to MHS.

**III. CONCLUSION**

Defendants' motion to dismiss Johnson and MHS for lack of personal jurisdiction is granted.[2]

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall

---

[1] While a sale for inadequate consideration can support a finding of mere continuation, plaintiffs have failed to provide the court with evidence to make that determination.

[2] Defendants' motion to dismiss for improper venue is denied as moot.  Nevertheless, it would appear that the proper venue is Colorado.

-7-

strictly comply with the standards enunciated by this court in
<u>Comeau v. Rupp</u>.  The response to any motion for reconsideration
shall not exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this <u>  12th  </u> day of January 2006, at Wichita, Kansas.


                <u>s/ Monti Belot              </u>
                Monti L. Belot
                UNITED STATES DISTRICT JUDGE